UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANA LEBRON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 2317 |
| v. | ) |
| | ) Judge George M. Marovich |
| | ) |
| CLARENCE WRIGHT, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dana Lebron ("Lebron") filed a complaint pursuant to 42 U.S.C. § 1983 asserting that defendant Clarence Wright ("Wright") violated his Eighth Amendment right to be free from cruel and unusual punishment. Wright filed a motion to dismiss plaintiff's complaint on the grounds that he is immune from suit and that Lebron failed to state a claim upon which relief may be granted. For the following reasons, the Court grants Wright's motion to dismiss.

## BACKGROUND

In considering a motion to dismiss, the Court accepts as true the following well-pleaded facts from plaintiff's complaint.[1]

On March 29, 2002, Lebron, an inmate at Menard Correctional Center, was moved to a new cell because of an altercation with his cellmate. After Lebron had transferred cells, he realized that some of his property had been left in his previous cell. In an effort to get his property back from his last cell and to get the attention of a staff member, Lebron stuck his arm

---

[1] The Court cannot consider the medical records and affidavits that plaintiff attached to his complaint without converting the motion to a motion for summary judgment. *See* Fed. R. Civ. Pro. 12(b); *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002).

through the "chuckhole."[2] When Lebron got the attention of one of the staff persons (who is identified only as Alvarado), Lebron asked to speak to the Lieutenant in order to get his property back.

Between 6:00 and 6:30 p.m., Alvarado came to the cells to hand out dinner. Since no one had come to Lebron's cell to discuss his missing personal property, Lebron again asked Alvarado to speak with the Lieutenant. After dinner, Alvarado came around again with another staff person to collect the dinner trash out of the cells. When they tried to collect the trash from Lebron's cell, Lebron stuck his arm through the chuckhole on his cell door and stated again that he needed to speak with a Lieutenant or a captain regarding his personal property.

When Lieutenant Wright arrived at Lebron's cell, Lebron relayed his concern about the personal property left in his former cell. Lebron asked Wright if Wright could have someone retrieve his property for him.

Wright told Lebron that he needed to take his arm out of the chuckhole. Lebron responded that he would not take his arm out of the chuckhole until he got his property back because he did not want to have to deal with this problem the next day. Wright took out a can of pepper spray, grabbed Lebron's arm and threatened him by pointing the pepper spray at him. Wright put the pepper spray away but continued to twist Lebron's arm. Lebron asked him to stop. Lebron also told Wright that he was not causing any problems but that he just wanted his property. Wright continued to twist Lebron's arm. Wright closed the chuckhole door on Lebron's arm and started kicking the chuckhole door closed on his arm. Wright stopped kicking

---

[2] A chuckhole is a small door on an inmate's cell door. A chuckhole is typically used to hand items or food to an inmate or to remove items or food from the cell.

and opened the chuckhole door when Alvarado appeared in the gallery. Lebron's arm remained in the chuckhole.

Alvarado came to Lebron's cell and told him he would retrieve Lebron's property. By this time, Lebron had suffered swelling, cuts and scrapes to his arm. With his arm in pain, Lebron told Wright that he needed a med-tech or doctor. Disregarding Lebron's request, Wright and Alvarado walked away. After Wright refused to call a med-tech, Lebron started yelling to the Control Center to get their attention. Throughout, Lebron's arm remained in the chuckhole.

An hour later, a med-tech, another staff member and Wright came to Lebron's cell. Wright demanded that Lebron be cuffed from behind. The med-tech stated that Lebron's arm should not be moved. Regardless of the med-tech's wishes, Wright grabbed, twisted and cuffed Lebron's arm.

Lebron was placed on a gurney and given a shot for his pain. A person from internal affairs met Lebron in the healthcare department to discuss what had happened and also to take pictures of the cuts and bruises on his arm. When Lebron was returned to his cell he required a sling, penicillin, Tylenol and ice.

Eventually, a staff member returned Lebron's personal property.

## DISCUSSION

I.  Standard for a Motion to Dismiss

When considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

II. <u>Eighth Amendment Claim</u>

    A. <u>Immunity</u>

Wright argues that he is immune from this suit because he was sued in his official capacity. He also argues that he is entitled to qualified immunity.

The Court first considers defendant's argument that he is immune from suit because plaintiff has sued him in his official capacity. The Eleventh Amendment to the Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment prohibits suits by a State's own citizens as well. The Supreme Court has explained:

> It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. (Internal citations omitted.) This jurisdictional bar applies regardless of the nature of the relief requested.

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983). The Eleventh Amendment does not, however, prohibit a suit against a state official if the suit is brought either (a) against the state official in his personal capacity or (b) against the state official in his official capacity where the requirements of *Ex Parte Young* are met. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

In this case, the Court concludes that Lebron has brought suit against Wright in his personal capacity. In his complaint, Lebron did not state explicitly whether he is suing Wright in

Wright's official or personal capacity. (Lebron states in his brief that he is suing Wright in Wright's personal capacity, but he cannot use a brief to amend his complaint.) Where a plaintiff does not state in his complaint in what capacity he is suing the defendant, the Court considers other clues in the complaint. The Seventh Circuit has explained:

> Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity.

*Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). Here, Lebron alleges tortious conduct (specifically, physical force) by an individual, not a policy of the correctional facility. Accordingly, the Court concludes that Lebron is suing Wright in his personal capacity, and the Eleventh Amendment does not provide Wright immunity from Lebron's claims.

Wright also asserts that the claims against him must be dismissed because he is entitled to qualified immunity from the claims. Qualified immunity is an affirmative defense and is generally not an issue on which it is appropriate to dismiss a claim pursuant to Fed.R.Civ.P.12(b)(6). The Seventh Circuit has explained:

> Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: '[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.' ... 'Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal ... and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint.'

*Alvarado v. Litscher*, 267 F.3d 648, 651-652 (7th Cir. 2001) (citing *Jacobs v. City of Chi.*, 215 F.2d 758 (7th Cir. 2000)). Accordingly, the Court will not dismiss Lebron's claim on qualified immunity grounds.

B.  *Failure to State a Claim*

Defendant also argues that plaintiff's claim should be dismissed for failure to state a claim under § 1983 for a violation of the Eighth Amendment right to be free from cruel and unusual punishment.

"The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment violative of the Eighth Amendment and actionable under 42 U.S.C. § 1983." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). According to the Seventh Circuit:

> Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.

*Filmore v. Page*, 358 F.3d 496, 508 (7th Cir. 2004). The Seventh Circuit instructs courts to consider several factors, including "the need for the application of the force, the amount of force applied, the threat a corrections officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Id.* at 504.

Liability under § 1983 for cruel and unusual punishment does not attach to every actionable battery. *Davis v. Lane*, 814 F.2d 397, 400 (7th Cir. 1987).

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Freeman v. Franzen*, 695 F.2d 485, 492 (7th Cir. 1982) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Thus, a prisoner's Eighth Amendment claim cannot be predicated on a *de minimus* use of force. *Filmore*, 358 F.3d at 504 (7th Cir. 2004). Rather, "the quantum of

force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Filmore*, 358 F.3d at 504 (quoting *Hudson*, 503 U.S. at 10, 112 S.Ct. 995).

In several cases, courts have considered whether the application of force used in an attempt to remove an inmate's arm from a chuckhole constitutes cruel and unusual punishment in violation of the Constitution. A number of courts have concluded that it does not. *Ford v. Page*, Case No. 00 C 4592, 2002 WL 31818996 at *6 (N.D. Ill. Dec. 13, 2002); *Pickett v. Detella*, 163 F. Supp.2d 999, 1004 (N.D.Ill. 2001); *Walker v. Ahitow*, Case No. 90-1322, 1992 U.S. Dist. Lexis 21831 at *4 (C.D. Ill. 1992), *aff'd* 9 F.3d 1549 (7th Cir. 1993); *but see Wilson v. Lee*, Case No. 01 C 5773, 2001 WL 1135900 at *3 (N.D. Ill. Sept. 24, 2001).

In *Walker v. Ahitow*, the plaintiff, an inmate, was angry over the denial of personal property so he refused to remove his arm from the chuckhole in his cell door. *Walker*, 1992 U.S. Dist. Lexis 21831 at *4. The guard, after repeatedly asking the plaintiff to remove his arm from the chuckhole, forced the arm back in, twisting the inmate's arm and scraping his skin. The court concluded that the plaintiff had failed, as a matter of law, to establish a constitutional violation. The court explained:

> Here, the plaintiff admits that he disobeyed at least two direct orders to remove his arm from the chuckhole. Furthermore, even accepting as true that [defendant] did threaten to break the plaintiff's arm, he actually caused only minor injury in twisting and scraping plaintiff's arm. Even assuming that [defendant] was unnecessarily rough when he forced the arm back through the slot, the matter did not amount to a constitutional violation.

*Walker*, 1992 U.S. Dist. Lexis 21831 at *4.

Similarly, in *Ford*, the court concluded that the use of force did not rise to the level of an Eighth Amendment violation. *Ford*, 2002 WL 31818996 at *6. There, Ford refused a direct order to remove his arm from the chuckhole. The defendant forced the arm back into the cell, resulting in Ford's scraped arm. In *Pickett*, the court upheld a jury verdict in favor of a

defendant on plaintiff's § 1983 claim for cruel and unusual punishment. There, the defendant shut a chuckhole on plaintiff's hands when the plaintiff refused to remove his hands from the chuckhole. The inmate suffered an injury requiring iodine, ice packs and Tylenol. The court rejected the plaintiff's argument that because he was locked in his cell, the defendant had used excessive force.

In *Wilson v. Lee*, by contrast, the court concluded that the plaintiff had stated a claim for excessive force. In that case, the plaintiff alleged that he had stuck his arm in the chuckhole and stated he would not remove it until he was allowed to speak with a lieutenant. The plaintiff alleged that the defendant grabbed plaintiff's arm, twisted and bended it, and slammed the chuckhole door against his arm for about fifteen to twenty minutes. The court concluded that the defendant had gone beyond reasonable force "since he was simultaneously inflicting pain while preventing [plaintiff] from withdrawing his arm."

In this case, plaintiff (like, apparently, a number of other inmates) willingly put his arm through the chuckhole as a bargaining chip to trade for property he had left behind. Plaintiff's allegations make clear that he repeatedly refused orders to remove his arm from the chuckhole. Thus, it is clear, as a matter of law, that Wright, without running afoul of the Eighth Amendment, was entitled to use *some* level of force to get Lebron's arm out of the chuckhole and back into his cell. Nothing in the complaint alleges that Wright's use of force was sufficiently excessive, malicious or sadistic to constitute a violation of Lebron's constitutional rights. Rather, the allegations make clear that Wright's use of force was designed to restore discipline and to put Lebron's arm back into his cell. At no point did Lebron state that he would remove his arm if the use of force ceased. Rather, Lebron's arm remained in the chuckhole even after Wright stopped attempting to force it back into Lebron's cell. It is also clear that the injury

to Lebron was relatively minor: his arm was swollen and scraped, requiring ice and Tylenol. The Court is mindful of the Seventh Circuit's caution that "the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Filmore*, 358 F.3d at 504 (quoting *Hudson*, 503 U.S. at 10, 112 S.Ct. 995). Because the force alleged was neither sadistic nor greater than that required to put Lebron's arm back into his cell, the Court cannot say that plaintiff has sufficiently alleged force "repugnant to the conscience of mankind."

The allegations in plaintiff's complaint are insufficient to state a claim for cruel and unusual punishment in violation of the Eighth Amendment. Accordingly, plaintiff's claim is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants defendant's motion to dismiss plaintiff's complaint. Plaintiff is granted leave to file an amended complaint within 21 days.

ENTER:

George M. Marovich
United States District Judge

DATED: 3/29/05